**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **LARRY FRAZIER JR.,** | * |
| **Plaintiff,** | * |
|  | * |
| **v.** | *      **Case No.: PWG-14-3974** |
|  | * |
| **PATRICK R. DONAHOE,** | * |
| **Postmaster General, United States Postal** | * |
| **Service (Capital Metro Agency),** |  |
| **Defendant.** | * |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Larry Frazier Jr., acting without counsel, was employed in various capacities by the Defendant United States Postal Service (the "USPS") until he took disability retirement.  I have read Frazier's long, rambling amended complaint, ECF No. 5, as bringing claims against Patrick R. Donahoe as the Postmaster General of the USPS for (i) discrimination and retaliation relating to his assignment to a new route; (ii) denial of a reasonable accommodation in removing him from an a limited duty route and rejecting his request to be placed on administrative leave; and (iii) denial of his ability to work overtime hours after he protested being assigned the new route.  Frazier seeks compensatory and monetary damages as well as damages for loss of consortium and contingency fees.

Defendant USPS has filed a motion to dismiss, or in the alternative, motion for summary judgment, Def.'s Mot., ECF No. 20, and accompanying memorandum, Def.'s Mem., ECF No.

20-1. Frazier has filed an opposition (again, long and rambling), Opp'n, ECF No. 24,[1] and accompanying memorandum, Opp'n Mem., ECF No. 24-1, and the USPS has filed a reply, Reply, ECF No. 27. A hearing is unnecessary. *See* Loc. R. 105.6. Because Frazier's discrimination and retaliation claims relating to his route reassignment are time-barred and his denial of reasonable accommodation and ability to work overtime claims are unsupported by the law, I will grant Defendant's motion and dismiss this case.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The factual and procedural background set forth in Frazier's amended complaint lacks clarity. It appears that he has been engaged in a decade-long dispute with the USPS with respect to the accommodations, or lack therefore, that the USPS provided to him while he was working in various capacities at the USPS, including as a letter carrier. *See* Am. Compl. 1, ECF No. 5. Prior to bringing this suit against Defendant, Frazier initiated at least one action against the USPS before the Equal Employment Opportunity Commission (the "EEOC"). *See Larry Frazier, Jr. v. U.S. Postal Service*, EEOC Request No. 0520140222 (Oct. 31, 2014) ("EEOC Request"), *available at* Compl., ECF No. 1. The EEOC affirmed the USPS's decision that it had not discriminated or retaliated against Frazier and denied his request for reconsideration. EEOC Request; *Larry Frazier, Jr. v. U.S. Postal Service*, EEOC Appeal No. 0120132589 (Jan. 8, 2014).

---

[1]     Frazier filed a motion to deny Defendant's motion to dismiss, or in the alternative, for summary judgment, which I will treat as his opposition to Defendant's motion. In Frazier's opposition, he once again moves for the appointment of counsel to represent him in this case. Frazier previously filed motions to appoint counsel, *see* ECF Nos. 3 & 29, which I denied, *see* ECF Nos. 4 & 30. Lodging a motion to appoint counsel in his opposition to Defendant's motion to dismiss, or in the alternative, for summary judgment is not the appropriate means to seek relief from this Court. However, because I will dismiss Frazier's action in its entirety, I will deny Frazier's third motion to appoint counsel as moot. Even were it not, I would deny Frazier's request for appoint of counsel because he clearly has demonstrated his ability to marshal facts and law to support his claims. *See Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).

Frazier previously engaged in certain EEOC protected activities in 2005 and 2007. *See* Am. Compl. 2. From his pleadings, it is unclear what those protected activities were. Frazier asserts that as a result of a settlement with the USPS, he was assigned limited duty on Route 1207 as his work assignment. *See* Compl. 2; Opp'n Mem. 8–9. During this time, Frazier was a letter carrier, where the job duties included "the delivery and collection of mail on foot or in a vehicle, requiring the ability to carry mail weighing up to 35 pounds in shoulder satchels or other equipment and to load or unload containers of mail weighing up to 70 [pounds]." Def.'s Mem. 3.[2] Due to the elimination of a route in Frazier's unit, all junior routes had to be reposted and reassigned based on seniority. *Id.* As a result, an employee senior to Frazier bid on and received Route 1207. *Id.* at 4. Frazier thus became eligible to bid on a new route and on April 8, 2009, requested a temporary assignment to Route 1204, which he began on April 14, 2009. *Id.* While on temporary assignment to Route 1204, Frazier was given the opportunity to bid on a permanent route. *Id.* On August 3, 2009, he chose Route 236, which was located in a different unit from Route 1207 and 1204. *Id.*

During Frazier's employment at the USPS in 2009, he was an employee "covered by the 2006-2011 National Agreement between the National Association of Letter Carriers ('NALC') and the USPS ('National Agreement') . . . ." *Id.* This agreement set forth certain rights and procedures for requesting a temporary or permanent light duty assignment, including that any such request requires medical documentation. *Id.* at 4–5. On October 14, 2009, Frazier submitted a "'Preferred Assignment Multiple Bid Card,' where he requested that he keep his

---

[2] The majority of the factual discussion here is adopted from Defendant's memorandum of law and the exhibits attached to Defendant's motion and Frazier's opposition. Frazier does not include a detailed factual discussion in his complaint or briefing. He does include a section "DISPUTED FACTS" in his opposition. *See* Opp'n Mem. 8–9. As a result, I will treat the facts presented by Defendant as uncontested to the extent that they are not actually disputed by Frazier in the "DISPUTED FACTS" portion of his memorandum.

current assignment of Route 236, but wrote 'with limited duty.'" *Id.* at 5 (citations omitted); *see also* Bid Card, Def.'s Mot., Ex. 16, ECF No. 20-18.  Upon receipt of this submission, Vincent Clark, a USPS customer service manager, responded by letter dated October 15, 2009, to Frazier's request and informed him that until his request for workers compensation benefits had been adjudicated by the Department of Labor, Frazier would have to request annual or sick leave.  *Id.* (citing Frazier Dispute Doc. 12, Def.'s Mot., Ex. 3, ECF No. 20-5).  In a letter dated October 26, 2009, Frazier "made a formal request for light duty assignment pending adjudication of his [worker's compensation] claim."  *Id.* at 6 (citing Frazier Dispute Doc. 22).  In a subsequent letter dated October 26, 2016, he requested to take administrative leave while his dispute was being resolved, which was denied.  *Id.*; *see also* Frazier Dispute Doc. 19.  During the time that Frazier was on leave, he did not work overtime.  Clark EEO Aff. 3–4, Def.'s Mot., Ex. 5, ECF No. 20-7.

"Prior to requesting a light duty assignment, plaintiff submitted a Duty Status report, completed by his physician, to the United States Department of Labor, Office of Workers' Compensation Program [(the 'Compensation Program')]."  Def.'s Mem. 6; *see also* Duty Status Report, Def.'s Mot., Ex. 15, ECF No. 20-17.  This report, dated September 30, 2009, set forth Frazier's work restrictions and compared these restrictions with the requirements of his letter carrier position.  *See* Duty Status Report.  As relevant here, the report stated that (i) Frazier could carry 10–50 pounds intermittently, although his position required carrying 35–70 pounds; (ii) Frazier could walk continuously for 2–4 hours per day, although his position required walking for 5–6 hours per day; and (iii) Frazier could climb intermittently for "as tolerable 1–2" hours per day, although his position required climbing intermittently 3 hours per day.  *See id.*

Frazier's Compensation Program claim was accepted on November 12, 2009.  *See* Compensation Program Letter, Def.'s Mot., Ex. 17, ECF No. 20-19.  In the letter accepting his claim, Frazier was informed that he may be eligible for continuation of pay with respect to lost time from work.  *Id.*

## II.   DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-

1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).  If the documents that the Court considers exceeds this scope, the Court must treat the motion as a motion for summary judgment.  Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013).

Here, both Defendant and Frazier attach voluminous exhibits to their filings.  *See* Def.'s Mot.; Opp'n; Reply.  These filings are integral to Frazier's complaint in that they relate directly to his discrimination and retaliation claims.  Frazier has not disputed the exhibits attached to Defendant's motion and has referenced them throughout his opposition memorandum.  He has also attached fifteen of his own exhibits.  Therefore, it is appropriate for me to consider these exhibits if I treated Defendant's motion as a motion to dismiss.

Alternatively, it also would be appropriate for me to consider these exhibits if I treated Defendant's motion as a motion for summary judgment.  Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the

nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*  "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party."  *Downing v. Baltimore City Bd. of School Comm'rs*, No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

The Court may consider a broader array of documents when it treats a motion to dismiss *as a motion for summary judgment*, which it may do pursuant to Fed. R. Civ. P. 12(d).  *See Syncrude Canada*, 916 F. Supp. 2d at 623.  When the Court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion."  *Ridgell v. Astrue*, DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012).  Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'"  *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).  It is obvious that the Court may construe a motion that is

styled as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," as a motion for summary judgment. *Ridgell*, 2012 WL 707008, at *7; *see Laughlin*, 149 F.2d at 260–61.  And, even if the motion is simply titled "Motion to Dismiss," as is not the case here, "the fact that defendant had attached other materials to its motion should have alerted plaintiff to the possibility" that the Court would treat the motion as a motion for summary judgment. *Ridgell*, 2012 WL 707008, at *7; *see Laughlin*, 149 F.2d at 260–61.  Here, Defendant clearly indicates that its motion is a "motion to dismiss, or alternatively, for summary judgment," Def.'s Mot. 1, and has attached almost two hundred pages of exhibits.  Frazier has had the opportunity to present pertinent material to the Court, presenting over fifty pages of his own exhibits and referring to Defendant's exhibits throughout his opposition memorandum.  For these reasons, it is appropriate for me to treat Defendant's motion as a motion for summary judgment and consider the exhibits attached to the parties' filings at this time.

## A.  Discrimination and Retaliation Claims

I have read Frazier's complaint as bringing discrimination and retaliation claims under Title VII relating to his reassignment from Route 1207 to 1204.  In order to have standing to file these claims, Frazier must exhaust his administrative remedies with the EEOC.  *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).  "A federal employee who believes herself to be aggrieved must initiate contact with [an EEOC] counselor within forty-five days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within forty-five days of the effective date of the action." *Khoury v. Meserve*, 85 F. App'x 960, 960 (4th Cir. 2004) (citing 29 C.F.R. § 1614.105).  "Courts strictly adhere to these time limits and rarely allow equitable tolling of limitations periods." *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990)).  "Each discrete discriminatory act starts a new clock for

filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (rejecting application of the continuing violations doctrine to "serial violations"). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114.

Defendant argues that Frazier's "reassignment from Route 1207 and his temporary placement onto Route 1204 are discrete acts." Def.'s Mem. 12. I agree. Defendant sets forth a timeline, uncontested by Frazier, regarding the alleged discriminatory acts that form the basis of his discrimination and retaliation claims. *Id.* On March 30, 2009, a more senior employee bid on Route 1207, and on April 8, 2009, Frazier requested temporary assignment to Route 1204, which was effective on April 14, 2009. *Id.* He initiated contact with the EEOC regarding these matters on July 14, 2009, *see* EEOC Counseling Form 2, Def.'s Mot., Ex. 1, ECF No. 20-3, more than forty-five days after the last alleged discriminatory act: the effective date of his assignment to Route 1204.

A plaintiff is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Frazier has not demonstrated that he is entitled to equitable tolling.

Accordingly, I find that Frazier did not exhaust his administrative remedies and that his discrimination and retaliation claims relating to this reassignment from Route 1207 are time-barred.[3]

## B.  Failure to Accommodate Claims

Because I have already found that Frazier's claims with respect to his reassignment from Route 1207 are time-barred, I will address his failure to accommodate claim only with respect to what I have interpreted to be Frazier's remaining failure to accommodate claims: Defendant's alleged withdrawal of his limited duty route assignment on October 14, 2009, and denial of his request to be put on administrative leave pending his request for a light-duty assignment.  As Defendant notes, Frazier previously indicated that he was bringing this claim under the American Disabilities Act of 1990 (the "ADA"), but "[t]he United States is specifically excluded from the ADA's definition of 'employer.'"  *Cassity v. Geren*, 749 F. Supp. 2d 380, 384 (D.S.C. 2010). Defendant correctly states that the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, "provides the exclusive judicial remedy for claims based upon a federal employee's disability."  Def.'s Mem. 11 n.3 (quoting *Magazine-Ward v. Donahoe*, No. RBH-11-2896, 2013 WL 4056313, at *14 (Aug. 12, 2013)) (internal quotation marks omitted); *see also Cassity*, 749 F. Supp. 2d. at 384 (citing *McGuinness v. USPS*, 744 F.2d 1318, 1322–23 (7th Cir. 1984) and *Boyd v. USPS*, 752 F.2d 410, 413–14 (9th Cir. 1985)).

"The analysis used to determine whether an employer has discriminated under the Rehabilitation Act is the same as the analysis under the [ADA]".  *Works v. Colvin*, 519 Fed.

---

[3]      Because I find that Frazier's discrimination and retaliation claims related to his reassignment from Route 1207 are time-barred, I have not addressed Defendant's other arguments for why these claims should be dismissed.

App'x 176, 184 (4th Cir. 2013).  With respect to failure to accommodate claims specifically, the

Fourth Circuit has held that

> in order for a plaintiff to establish a prima facie case against his employer for
> failure to accommodate under the ADA, the plaintiff must show: "(1) that he was
> an individual who had a disability within the meaning of the statute; (2) that the
> [employer] had notice of his disability; (3) that with reasonable accommodation
> he could perform the essential functions of the position . . .; and (4) that the
> [employer] refused to make such accommodations."

*Id.* (alterations in original) (quoting *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373, 387 n.11

(4th Cir.2001)).  As a threshold matter, "only persons who are 'qualified' for the job in question

may state a claim for discrimination."  *Tyndall v. Nat'l Educ. Centers, Inc. of Ca.*, 31 F.3d 209,

212 (4th Cir. 1994); *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) ("A

'qualified individual' is 'an individual who, with or without reasonable accommodation, can

perform the essential functions of the employment position . . . .'" (quoting 42 U.S.C.

§ 12111(8))).

In its motion, USPS states that "it will assume, for the purposes of this motion only, that

at all times relevant here, plaintiff is an individual with a disability."  Def.'s Mem. 21.

Additionally, USPS does not address the second element regarding whether it had notice of

Frazier's disability.  As a result, for the purposes of this motion, Frazier need only demonstrate

the third and fourth elements to establish a prima facie case for failure to accommodate.

"[A]n employer is not obligated to provide an employee the accommodation he or she

requests or prefers; the employer need only provide some reasonable accommodation." *Crawford*

*v. Union Carbide Corp.,* 202 F.3d 257 (Table), 1999 WL 1142346, at *4 (Dec. 14, 1999)

(quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998)), *cert. denied*, 530

U.S. 1234 (2000).  "A reasonable accommodation is one that 'enables [a qualified] individual

with a disability . . . to perform the essential functions of [a] position.'" *Jacobs v. N.C. Admin.*

*Office of the Courts*, 780 F.3d 562, 580 (4th Cir. 2015) (alterations in original) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)).   "An employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform *all* of the essential functions of her position".  *Id.* at 581.

1. *Withdrawal of Frazier's Alleged Limited Duty Bid Assignment*

Frazier alleges that "on October 15, 2009, management withdrew [his] limited duty bid assignment and instructed him to leave the work floor stating there was no limited duty work available . . . ."  Am. Compl. 2.  However, this allegation is contradicted by the uncontested exhibits attached to the briefings.  After temporarily being assigned to Route 1204, Frazier chose Route 236 on August 3, 2009.  *See* Frazier Reassign. Doc. 10, Def.'s Mot., Ex. 4, ECF No. 20-6. Nothing in this letter supports Frazier's contention that it was a limited duty bid assignment.  On October 14, 2009, Frazier filled out a Preferred Assignment Multiple Bid Card and indicated that he wanted to "keep assignment [to Route 236] w/ limited duty."  Bid Card.  Frazier's desire to keep his Route 236 assignment with limited duty shows that Route 236 was not a limited duty route.  USPS treated this letter as an indication that Frazier "cannot complete [his] assigned duties daily, without taking intermittent breaks of an unspecified time, due to [his] medical condition."  Frazier Dispute Doc. 12.  Based on these documents, I do not find that there is a genuine dispute as to a material fact as to whether Frazier's Route 236 was a limited duty route; therefore, any failure to accommodate claim for withdrawing his limited duty bid assignment to Route 236 is unsupported.

However, even if I did find that Route 236 was a limited duty bid assignment, Frazier has failed to demonstrate that he can establish the third element of the prima facie case for a failure to accommodate claim that "with reasonable accommodation he could perform the essential

functions of the position." *See Wilson*, 717 F.3d at 345.   Frazier does not contest that he provided USPS with a form comparing his job requirements with his physical limitations set forth by his doctor. *See* Duty Status Report.   This form clearly indicates that Frazier could not meet the basic physical requirements of a letter carrier.   For example, (i) Frazier could carry 10–50 pounds intermittently, although his position required carrying 35–70 pounds; (ii) Frazier could walk continuously for 2–4 hours per day, although his position required walking for 5–6 hours per day; and (iii) Frazier could climb intermittently for "as tolerable 1–2" hours per day, although his position required climbing intermittently 3 hours per day.   Further, Frazier's Preferred Assignment Multiple Bid Card provides further support that he became unable to perform his essential functions as a letter carrier generally and on Route 236 specifically. *See* Bid Card.   In this form, Frazier indicates a desire to keep his position as a letter carrier on Route 236 "w/ limited duty." *Id.*   As a result, Frazier is unable to establish this element, and his claim must be dismissed.

2. *Requirement that Frazier Use Sick or Annual Leave*

I read Frazier's amended complaint as alleging USPS failed to accommodate his disability when it required that he use annual or sick leave while waiting for a Department of Labor determination regarding his Compensation Office claim. *See* Am. Compl. 2.   As I already determined, Frazier was unable to perform the essential functions of a letter carrier.   Where an employee is unable to perform the essential functions of his or her job, permitting that employee to use annual or sick while the situation is resolved is a reasonable accommodation. *See Moore v. Md. Dep't of Pub. Safety & Corr. Svcs.*, No. CCB-11-553, 2011 WL 4101139, at *3 (D. Md. Sept. 12, 2011) (finding plaintiff's use of sick leave and unpaid leave may qualify as a reasonable accommodation); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135 (9th Cir.

2001) ("A leave of absence for medical treatment may be a reasonable accommodation under the ADA."). Here, Frazier was permitted to use sick or annual leave while he was gathering medical documentation to support his claim, and this documentation was being evaluated.[4] Although Frazier has alleged that he was entitled to use administrative leave given his status as a veteran—and ultimately it appears he was informed of the possibility that he could receive continuance of pay after his favorable outcome with respect to his Compensation Program claim, *see* Compensation Program Letter—he has not alleged any reason why he was entitled to administrative leave under the Rehabilitation Act. For these reasons, I find that his claim that he was denied the ability to use administrative leave cannot move forward.

### C. Denial of Overtime Opportunities

Frazier also alleges that he "was precluded from working overtime." *See* Am. Compl. 2. In October 2009, Frazier was on the overtime list and was not denied the ability to work overtime. *See* Clark EEO Aff. 3. Frazier did not work overtime because he "was not working at that time, he was using leave pending approval of light duty." *Id.* at 4. Frazier does not explain how he should be eligible for overtime when he was on leave or present any evidence that he was denied overtime in a way that supports his claim. Accordingly, I will dismiss this claim.

### III.   CONCLUSION

---

[4]     Frazier does not contend that USPS's request for medical documentation was impermissible. Even if Frazier did, there is nothing inappropriate about an employer requesting medical documentation for a disability. *See, e.g.*, 16 C.F.R. § 1630.14(c) ("Examination of employees. A covered entity may require a medication examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions."); *May v. Roadway Express, Inc.*, 221 F. Supp. 2d 623, 628 (D. Md. 2002) ("While Plaintiff may have been 'flabbergasted' that Defendant did not automatically accept his own determination that he was disabled without first obtaining some medical documentation, the Court finds nothing untoward in Defendant's straightforward request for additional information.").

For the reasons explained above, I will GRANT Defendant's motion to dismiss, or in the alternative, motion for summary judgment.[5]

## **ORDER**

Accordingly, it is this 15th day of March, 2016, hereby ORDERED that Defendant's motion to dismiss, or in the alternative, motion for summary judgment, ECF No. 20, is GRANTED.  The Clerk IS DIRECTED to close this case.

So ordered.

_____/S/_____
Paul W. Grimm
United States District Judge

dpb

---

[5]     Because I am dismissing Frazier's case against USPS in its entirety, I do not need to address USPS's arguments that certain of the damages sought by Frazier are barred by law.  *See* Def.'s Mem. 29–31.